IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 22-150-BLG-DWM |
| Plaintiff, | |
| vs. | ORDER |
| NICOLE MARIE SCHWALBACH, | |
| Defendant. | |

Before the Court is Petitioner Nicole Marie Schwalbach's ("Schwalbach")
28 U.S.C. § 2255 Motion to Vacate Judgment. (Doc. 122.) Schwalbach,
proceeding pro se, challenges the 120-month sentence imposed upon her after she
pled guilty to one count of Possession with Intent to Distribute Methamphetamine.
Schwalbach now challenges her sentence based upon ineffective assistance of
counsel and a disparity between her sentence and that of a co-defendant.

## I.    Preliminary Review

Before the United States is required to respond, the Court must determine
whether "the motion and the files and records of the case conclusively show that
the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Court is to review
the § 2255 "motion, together with all the files, records, transcripts, and
correspondence relating to the judgment under attack[.]" Rule 4(b), Rules

1

Governing Section 2255 Proceedings for the United States District Courts. A

district court must summarily dismiss a § 2255 application "[i]f it plainly appears

from the motion, any attached exhibits, and the record of prior proceedings that the

moving party is not entitled to relief." *Id.* A petitioner "who is able to state facts

showing a real possibility of constitutional error should survive Rule 4 review."

*Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996)

("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254

Cases). But the Court should "eliminate the burden that would be placed on the

respondent by ordering an unnecessary answer." Advisory Committee Note

(1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note

(1976), Rule 4, Rules Governing § 2255 Proceedings.

## II.    Background

On February 22, 2023, while represented by counsel, Schwalbach pled guilty

to Count I of the Superseding Information, Possession with Intent to Distribute

Methamphetamine in violation of 21 U.S.C. § 841(a)(1). *See*, (Docs. 27 & 31.)

The count contained in the Superseding Information carried a mandatory minimum

5-year penalty. (Doc. 27 at 1.) Schwalbach entered her guilty plea pursuant to the

terms outlined in the parties' Plea Agreement. (Doc. 28.)

The plea agreement was made pursuant to Rule 11(c)(1)(A) and (B) of the

Federal Rules of Criminal Procedure, whereby the Government agreed to move to

dismiss the Indictment and make the recommendations contained within the agreement. (Doc. 28 at 2.) Schwalbach acknowledged that the count to which she was admitting guilt carried a mandatory minimum term of imprisonment of 5 years and a maximum term of imprisonment of 40 years. (*Id.*) Further, Schwalbach was informed that she had no right to withdraw her plea if the Court did not accept or follow the Government's recommendation. (*Id.*) In the plea agreement and during the change of plea hearing, Schwalbach was advised of all of the rights she would be waiving by pleading guilty. (*Id.* at 3-6.) Schwalbach indicated that she understood the rights and the consequences of her waiver, as well as the maximum penalties. (*Id.*); *see also*, Min. (Doc 31.)

A presentence report was prepared. At the sentencing hearing on June 28, 2023, the Indictment, which charged Conspiracy to Possess with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 846 and Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1), both of which carried mandatory minimum 10-year sentences, *see* (Doc. 2), was dismissed on the motion of the United States.

Schwalbach's original advisory guideline range was calculated at 188 to 235 months, (Doc. 65 at 35), the government then suggested the appropriate range to be 151 to 188 months. *See*, (Doc. 50 at 2.) Based upon an adjusted offense level of 27 and a criminal history level of VI, the guideline range was calculated at the time

3

of sentencing to be 130 to 162 months. Of particular note, was Schwalbach's criminal history which was deemed to be "extraordinary" by the undersigned, even in light of the 27 years spent presiding over federal sentencing hearings. Schwalbach's counsel referred to her criminal history alternatively as "mind-blowing" and "staggering." *See*, Trans. (Doc. 76 at 8.) The government noted that Schwalbach's criminal history consumed 15 paragraphs of the presentence report[1] and that she was on supervision at the time she committed the crime at issue. (Doc. 50 at 2.) Schwalbach had 6 felony convictions, 13 misdemeanor convictions, and 9 active warrants out of California, Colorado, and Montana. *See*, Trans. (Doc. 76 at 20, 25.)

Although the Government recommended a sentence of 106 months, in light of Schwalbach's history, threat to the community and her continued criminal behavior, the Court deemed that recommended sentence to be inadequate. (*Id.* at 18-22.) To fulfill the sentencing objectives of 18 U.S.C. § 3553(a), Schwalbach was sentenced to the Bureau of Prisons, for 120 months, followed by a 5-year period of supervised release. *See*, Min. (Doc. 61); Judg. (Doc. 63.)

Schwalbach waived her right to appeal her sentence in the plea agreement. (Doc. 28 at 6-7.) Schwalbach did not appeal. She timely filed her § 2255 motion

---

[1] This does not include "Other Criminal Conduct" which consumed an additional 16 paragraphs of the PSR and included warrants that were outstanding at the time of sentencing. (Doc. 65 at 21-27.)

4

on May 29, 2024.  *See*, 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276

(1988).  She asks that her sentence be reduced.  (Doc. 122 at 13.)

## III.   Analysis

The Court has considered Schwalbach's challenge to the validity of her

sentence.  For the reasons explained below, the § 2255 motion is denied and a

certificate of appealability will not issue.

### A. Legal Standard

"A prisoner in custody under a sentence of a court established by Act of

Congress claiming the right to be released upon the ground that the sentence was

imposed in violation of the Constitution or laws of the United States [...] may

move the court which imposed the sentence to vacate, set aside or correct the

sentence."  28 U.S.C. § 2255(a).  To warrant relief under § 2255, a prisoner must

allege a constitutional, jurisdictional, or otherwise "fundamental defect which

inherently results in a complete miscarriage of justice [or] an omission inconsistent

with the rudimentary demands of fair procedure."  *United States v. Timmreck*, 441

U.S. 780, 783 (1979)(*quoting Bowen v. Johnston*, 306 U.S. 19, 27 (1939)).  In

contrast, "[e]rrors of law which might require reversal of a conviction or sentence

on appeal do not necessarily provide a basis for relief under § 2255."  *United*

*States v. Wilcox*, 640 F. 2d 970, 973 (9th Cir. 1981).

### B. Ineffective Assistance of Counsel

5

Schwalbach waived the right to collaterally attack "any aspect" of her sentence, including a challenge to the sentence in a collateral § 2255 proceeding. (Doc. 28 at 6-7.) The waiver, however, did not preclude Schwalbach from pursuing an action alleging ineffective assistance of counsel. (*Id*. at 7.) Thus, in order for Schwalbach to obtain the resentencing she seeks, she must assert an ineffective assistance of counsel claim.

Schwalbach claims counsel was ineffective in various respects. These claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Schwalbach must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id*. at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id*. at 694.

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91. "A fair assessment of attorney

performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

All of Schwalbach's claims all relate to her sentencing. She first challenges the validity of her sentence because following her sentencing, co-defendant Mathew Schroeder received a 54-month sentence. Schwalbach claims he played a more significant role in the drug distribution than she did. (Doc. 122 at 5.) She believes this demonstrates an unfair sentencing disparity. (*Id.*)

She next concludes that her trial counsel, Ms. Cammi J. Woodward ("Woodward"), was ineffective in several aspects. Schwalbach believes Woodward erred by not arguing for a 2-point reduction based upon Schwalbach playing a minor role in the drug conspiracy. (*Id.* at 6.) She claims Woodward erred by allowing for her sentencing hearing to be expedited and having the undersigned, who was purportedly "unfamiliar" with her case, impose sentence. (*Id.* at 8.) Finally, Schwalbach alleges Woodward was ineffective for failing to advise her of an 11(c)(1)(C) binding plea agreement as an option. (*Id.* at 9.)

### i. Minor Role Adjustment

Schwalbach faults Woodward for never presenting an argument for a 2-point reduction for playing a minor role. Schwalbach believes it would have been a valid argument in her case because she never had the drugs in her possession and

was never in control of them.  (Doc. 122 at 6.)

The determination to apply a minor role adjustment is based upon the
totality of the circumstances and is heavily dependent upon the facts of the case.
U.S. Sentencing Guidelines Manual §3B1.2 cmt. n. 3(C).  The Sentencing
Guidelines provide a non-exhaustive list of factors to aid courts in making this
determination: (1) the degree to which the defendant understood the scope and
structure of the criminal activity; (2) the degree to which the defendant participated
in planning or organizing the criminal activity, (3) the degree to which the
defendant exercised decision-making authority or influenced the exercise of
decision-making authority, (4) the nature and extent of the defendant's
participation in the commission of the criminal activity, and (5) the degree to
which the defendant stood to benefit from the criminal activity.  *Id*. at § 3B1.2 cmt.
n. 3( C)(1)-(5).

Schwalbach admitted bringing drugs into the community.  *See*, (Doc. 53-1 at
2). Schwalbach was receiving methamphetamine from Colorado and distributing it
in Montana.  She sold drugs to undercover DEA agents in Billings, Montana, on
two separate occasions in December of 2021. (Doc. 30 at 3.)  The sales consisted
of 4.93 grams of methamphetamine and 106.8 grams of methamphetamine, and the
drugs were found to be 100% pure and 95% pure, respectively.  (Doc. 65 at 5-6.)

Further, following a pursuit by law enforcement, in which Schwalbach and others

fled and abandoned their vehicle, 427.3 grams of methamphetamine were

recovered from the vehicle. (Doc. 30 at 4); *see also*, (Doc. 64 at 7.) Upon her

arrest, 18.8 grams of methamphetamine and .44 grams of fentanyl were recovered

from Schwalbach's backpack. (Doc. 64 at 7.)

Based upon the record before this Court, it does not appear that Schwalbach

was "substantially less culpable than the average participant" for purposes of a

minor role adjustment. She was dealing drugs in the Billings area along with her

co-defendants who were bringing in large amounts of methamphetamine from out

of state. Schwalbach was involved in the sale of drugs to undercover agents and

the vehicle from which she fled contained a large amount of methamphetamine.

The government described Schwalbach's role as being the "local contact" in

Billings and noted that once the undercover agent established trust with

Schwalbach, she introduced the agent to a co-defendant for larger purchases.

Moreover, drugs were recovered from Schwalbach's person upon her arrest. Thus,

it appears she understood the nature and scope of the criminal activity, she actively

participated in the criminal activity, and she benefitted from her role in the activity.

Moreover, Schwalbach's claim that she never had drugs in her possession or

control is belied by the record.

Thus, based upon the totality of the circumstances, Schwalbach did not play

9

a minor role in the drug distribution under USSG §3B1.2. Because she has not provided factual support for the adjustment, she consequently cannot show that Woodward performed deficiently by failing to argue for a minor role adjustment. *See, Strickland*, 466 U.S. at 687-88. This claim will be denied.

### ii. Expedited Sentencing

Schwalbach claims that Woodward "allowed for my sentencing to be expedited which at the last minute changed my judge." (Doc. 122 at 8.) She believes that had this not happened and someone more familiar would have overseen the case, the outcome "would have been a lot different." (*Id.*) While Schwalbach faults Woodward for "allowing" an expedited sentencing, she overlooks the fact that she, at least in part, requested the same.

On March 6, 2023, following her change of plea, Woodward filed an unopposed motion to expedite sentencing. (Doc. 36.) Apparently, during the change of plea hearing, Schwalbach inquired of the Court about expediting her sentencing so that she would not have to remain in county jails for an additional seven months. (*Id.* at 2.) Counsel then contacted the Presentence Report writer who informed Woodward that she would be able to have the report completed by June and had no objection to the defense request for an expedited hearing. (*Id.*) Similarly, the Government consented to setting the sentencing hearing in June. (*Id.*) The motion was granted. (Doc. 38.) Subsequently, the matter was

reassigned to the undersigned.  (Doc. 55.)

As set forth above, the basis for the sentence was explained at length during the sentencing hearing and was primarily driven by Schwalbach's extensive criminal history, although all of the § 3553(a) factors were considered and discussed.  Moreover, the sentence Schwalbach received was below the adjusted advisory guideline range.  The Court would note, as discussed below, that one of Schwalbach's co-defendants also received a 120-month custodial sentence. Additionally, prior to sentencing, Schwalbach's prior court appearances were before Magistrate Judge Cavan. *See e.g.*, (Docs. 9 & 31.)  Thus, any of the Article III judges who could have presided over Schwalbach's sentencing would have had the same level of familiarity, or lack thereof, as the undersigned.

It is disingenuous for Schwalbach to now fault Woodward for filing a motion to expedite which seems to have been filed at Schwalbach's request and for her benefit.  Schwalbach provides no more support for her claim than her own conclusory statements.  She has failed to show that she was prejudiced, or that the outcome of her sentencing hearing would have been different. *Strickland*, 466 U.S. at 687-88, 694.  This claim will be denied.

### iii.  11(c)(1)(C) Plea Agreement

Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreements bind the court to impose an agreed-upon sentence if it accepts the agreement.  At no time in

the change of plea proceedings or sentencing did Schwalbach assert that she sought

a binding agreement.  In fact, she faults counsel for never informing her that an

11(c)(1)(C) plea agreement was an option, or "something to fight for."  (Doc. 122

at 9.)  But, even if Schwalbach had been made aware of the existence of such an

agreement, she cannot establish that Woodward performance was professionally

unreasonable or that but for Woodward's objectively unreasonable performance,

the outcome of the plea-bargaining process would have been different. *See, Lafler

v. Cooper*, 566 U.S. 156, 163 (2012).

 *Strickland*'s standards generally apply to the plea process, *see Chaidez v.

United States*, 568 U.S. 342, 349 (2013), and the constitutional right to effective

counsel is required during plea negotiations.  *Missouri v. Frye*, 566 U.S. 134, 144

(2012).  However, "there is no constitutional right to plea bargain." *Weatherford v.

Bursey*, 429 U.S. 545, 561 (1977).  Successful negotiation of a plea agreement

involves factors beyond the control of counsel, including "the cooperation of the

prosecutor, who has no obligation to offer such an agreement."  *United States v.

Hall*, 212 F. 3d 1016, 1022 (9th Cir. 2000).  Additionally, there is no absolute right

that a federal judge accepts a plea agreement.  *Frye*, 566 U.S. at 149 (*citing

Santobello v. New York*, 404 U.S. 257 (1971)).

 Schwalbach indicates that she believed she was signing an agreement for 5-

years and that that sentence was her "worst case scenario." (Doc. 122 at 9.)

Schwalbach asserts Woodward should have explained the "buyer/seller" nature of the plea agreement and that, had she done so, Schwalbach would have taken the 11(c)(1)(C) plea agreement. *Id.* But even assuming all of this is true, there is no indication that the Government was willing to offer Schwalbach a binding plea agreement, nor did Schwalbach have a constitutional right to a plea agreement, much less a binding agreement. Moreover, Schwalbach was advised of the maximum potential penalty the offense carried and indicated she understood that the Government would recommend a sentence, but that the Court was under no duty to follow the Government's recommendation, nor was she allowed to withdraw her plea if that happened.

In short, Woodward cannot be found to be ineffective for failing to secure a binding agreement, to which Schwalbach was not entitled. The claim will be denied.

### iv. Sentencing Disparity

Schwalbach's sentencing disparity claim also lacks merit. The fact that co-defendant Schroeder received a lower sentence than Schwalbach does not demonstrate that Woodward was ineffective. While Schwalbach and Schroeder may have engaged in similar conduct and were offered similar plea agreements, Schwalbach had a very extensive criminal history as recognized by both of the parties and the undersigned. As set forth above, Schwalbach's adjusted guideline

13

range was 130-162, while Schroeder's guideline range 100 to 125 months. It is also noteworthy that Schwalbach's other co-defendant, Dominic Earl Hall, received a sentence 120 month on September 26, 2024. (Docs. 129 & 130.) Thus, the sentencing disparity argument does not hold true when comparing Schwalbach's sentence to Hall's sentence.

Moreover, by entering into a plea agreement, the Government dismissed the Indictment which charged Schwalbach with two counts that both carried a mandatory minimum 10-year sentence. By entering into a plea agreement, Schwalbach received a significant benefit of pleading to a single count that carried a 5-year mandatory minimum. Thus, Schwalbach received a significant benefit by virtue of the plea agreement. Schwalbach has not met either prong of Strickland; she cannot show Woodward provided unreasonable assistance relative to this sentencing claim or that the result of her proceeding would have been different. *Strickland*, 466 U.S. at 687-88, 694. This claim must also be denied.

For all of the reasons set forth herein, Schwalbach's § 2255 motion will be denied and dismissed.

## IV.    Certificate of Appealability

A movant may appeal a district court's dismissal of a § 2255 motion only after obtaining a certificate of appealability from the district court or the circuit court. 28 U.S.C. § 2253( c)(1)(B). "A certificate of appealability may issue ...

only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253( c)(2). This standard is satisfied if "jurists of reason could disagree with the district court's resolution of the constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)(*citing Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). Under this standard, the Court concludes that Schwalbach is not entitled to a certificate of appealability. No reasonable jurist would find debatable Schwalbach's failure to demonstrate entitlement to relief on the claims presented in her § 2255 Motion.

Accordingly, IT IS ORDERED:

1. Schwalbach's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 122) is DENIED.

2. A certificate of appealability is DENIED. The clerk shall immediately process the appeal if Schwalbach files a Notice of Appeal.

3. The clerk shall ensure that all pending motions in this case and in CV 24-66-BLG-DWM are terminated and shall close the civil file by entering judgment in favor of the United States and against Schwalbach.

DATED this 28ᵗʰ day of October, 2024.

Donald W. Molloy, District Judge
United States District Court